# EXHIBIT F

THE LAW FIRM OF RAVI BATRA, P.C.
The Batra Building
142 Lexington Avenue
New York, NY 10016
Michael W. Kennedy, Esquire
Ravi Batra, Esquire (*pro hac vice*)
(212) 545-1993
(212) 545-0967 (fax)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>*Plaintiff,*<br><br>v.<br><br>IN TOUCH CONCEPTS, INC. d/b/a ZCOM WIRELESS,<br><br>*Defendant.* | CASE No. 11 Civ. 6493 (PGS)(TJB)<br><br>REPLY DECLARATION OF VIKAS DHALL a/k/a I.P. SINGH IN FURTHER SUPPORT OF A MOTION TO DISMISS |

VIKAS DHALL, a/k/a I.P. SINGH, hereby declares, certifies and affirms, under the penalties of perjury, pursuant to the laws of the United States of America:

1.    I am President and Chief Executive Officer of defendant In Touch Concepts, Inc. d/b/a Zcom ("Zcom"). I make this reply declaration upon personal

1

knowledge and submit same in further support of Zcom's motion to dismiss, which now applies to VZW's amended complaint.

2.  By letter dated July 26, 2011, VZW issued a notice of termination of its agency relationship with Zcom effective January 31, 2012 ("Termination Letter") (Batra 1/10/12 Decl. Ex. A). Notwithstanding efforts to amicably resolve the bad faith-issued termination, VZW would not budge; and Federal Courts in New York declined to Order temporary injunctive relief staying the termination. Accordingly, at the close of business on January 31, 2012, Zcom's authority to market and sell VZW branded products and services was terminated.

3.  Upon the January 31, 2012 termination of the agreement, the authority of all companies affiliated with Zcom (none of which are in New Jersey) and approximately 50 independent contractors in multiple states, including 3 in New Jersey, who marketed and sold VZW branded products and services, was also terminated.

4.  <u>Required Pre-Suit Notification by VZW Not Given</u>: My attorneys have explained to me that in its opposition to Zcom's motion to dismiss, VZW claims it met its preconditions to commencing this lawsuit against Zcom by sending the termination notice. This simply cannot be so, as nowhere does the

termination notice even suggest that VZW intended to begin any court proceedings against Zcom - or were even considering same.

5.　Moreover, the contract between Zcom and VZW, which was solely drafted by VZW, also required that the party contemplating a lawsuit arising under the contract provide the other party with a pre-suit opportunity to negotiate. Not only does the termination letter not provide any notification of VZW initiating any suit against Zcom. VZW obviously also did not meet and negotiate regarding the lawsuit ultimately filed, in violation of ¶¶ 14 and 14.2 of the contract. VZW also rebuffed any attempts by Zcom to negotiate subsequent to issuance of the July 26, 2011 termination notice.

6.　A time line of pertinent communications reveals, beyond doubt, that VZW failed to meet its absolute burden of providing for written pre-suit notice and an opportunity to negotiate, all of which were preconditions to commencing the instant action, therefore mandating dismissal:

　　a.　July 26, 2011: VZW issued its termination letter which contained <u>no</u> mention of any contemplated or prospective "court case" against Zcom (Batra 1/10/12 Decl. Ex. C);

b.  August 18, 2011: I wrote to VZW's Director of Indirect Operations, Pino Salonna ("Pino") seeking to meet and negotiate to undo the termination notice issued in bad faith (Dhall 1/10/12 Decl. Ex. A );

c.  August 24, 2011: on behalf of VZW, Pino wrote to me and declined to meet or negotiate (Dhall 1/10/12 Decl. Ex. B). That letter contained <u>no</u> mention of any contemplated "court case" against Zcom;

d.  August 30, 2011: I e-mailed VZW, via Pino, proposing 3 Options for Zcom's future, to wit: (1) revamp corporate governance; (2) merge with another VZW Master Agent; and, (3) sell to a VZW Master Agent (Dhall 1/10/12 Decl. Ex. C);

e.  September 16, 2011: On behalf of VZW, Pino e-mailed me, rejecting Option 1 and 2, and directing Zcom to focus on Option 3, to wit: sell our operation (Dhall 1/10/12 Decl. Ex. D). That e-mail contained <u>no</u> mention of any prospective "court case" against Zcom;

f.  September 20, 2011 - September 27, 2011: a lawsuit against Zcom was commenced, and amended, in New York State Supreme Court, New York County, by 2 sub agents of Zcom seeking to, *inter alia*, pin responsibility for VZW's prepaid activation scheme on Zcom. This lawsuit alleges that then VZW

4

District Manager Tom Verghese was the "architect" of the scheme (*See* Batra 1/10/12 Decl. Exs. J, T);

   g. October 7, 2011: Zcom's attorney, Ravi Batra, Esq., wrote to VZW seeking contractual indemnification from VZW associated with misconduct by VZW and its representatives resulting in the issues raised by the sub agents' lawsuit (Batra 1/10/12 Decl. Ex. T);

   h. October 10, 2011: VZW's Director of National Distribution Sales Operations Gregg Schenkel ("Gregg") engaged in e-mail communication with a prospective purchaser of Zcom. That e-mail contains <u>no</u> mention of any contemplated or prospective "court case" against Zcom;

   i. October 12, 2011: Gregg e-mailed me regarding VZW's sale process (Ex. CC). That e-mail contains <u>no</u> mention of any contemplated or prospective "court case" against Zcom;

   j. October 14, 2011: I e-mailed Gregg and expressed displeasure with VZW's bad faith and unfair conduct after having learned from a prospective purchaser of Zcom that VZW was using real estate brokers to "show" Zcom's locations - particularly given that Zcom was trying to sell, at VZW's direction. I made clear that such conduct by VZW could result in legal action by Zcom <u>against</u> VZW, to wit: "<u>a stiff rebuke in court</u>" (<u>emphasis added</u>) (Ex. DD) (Zcom thus

5

complied with pre-suit notification two months prior to filing its tort case in Manhattan Supreme Court on December 28, 2011);

k.   October 19, 2011: VZW, by letter from its attorneys, rejected Zcom's October 7, 2011 request for contractual indemnification (Batra 1/10/12 Decl. Ex. U). Critically, even that letter contained no mention of any contemplated or prospective "court case" against Zcom by VZW;

l.   October 26, 2011: subsequent to VZW's out of hand rejection of Zcom's request for contractual indemnification, Zcom's attorney Ravi Batra, Esq. spoke with VZW's lead counsel, Philip Sellinger, by telephone. Mr. Batra expressed concerns about VZW's actions, and indicated that litigation against VZW would be forthcoming from Zcom absent a resolution. At no time did counsel for VZW mention any contemplated or prospective "court case" against Zcom (Batra 2/28/12 Decl. ¶ 13(c));

m.   October 28, 2011: Mr. Batra exchanged e-mails with VZW's counsel wherein VZW's lead counsel requested that during an anticipated medical absence, his colleagues be copied on any correspondence from Mr. Batra, and Mr. Batra wished VZW's lead counsel well. At no time did counsel for VZW mention any contemplated or prospective "court case" against Zcom (Ex. AA; Batra 2/28/12 Decl. ¶ 13(d));

6

    n. November 4, 2011: unbeknownst to Zcom - <u>without any notice or warning</u>, VZW commenced the instant action, merely seeking a declaratory judgment, which solely relates to the contract between Zcom and VZW (Ex. A); and,

    o. November 7, 2011: having learned that this action was commenced, yet <u>before</u> actual service, Mr. Batra distressingly e-mailed lead counsel for VZW as the commencement of this action was by "ambush" (Ex. BB). The claim of "ambush" was not made lightly, and is grounded in the facts that: (a) there was <u>never</u> anything even resembling pre-suit notice provided to Zcom by VZW; (b) VZW's attorneys never suggested that they would be commencing litigation against the victim of VZW's bad faith-based termination notice (Batra 2/28/12 Decl. ¶ 13(c)).

Thus, VZW failed to meet even a scintilla of its preconditions to filing suit. Even without resorting to a strict interpretation of the formal requirements VZW itself drafted into the contract, VZW even failed to provide informal pre-suit notice or any opportunity to negotiate - notwithstanding multiple opportunities to do so in both communications directly with me, and/or with Zcom's attorneys.

  8. I have read Pino's Certification dated February 5, 2012 which accompanied VZW's opposition to Zcom's motion to dismiss.

9.      Critically, Pino's representation that Zcom has operated any businesses within New Jersey is both false and misleading (Pino Cert. ¶ 6). The "sub agents" that Pino refers to are all independent contractors having a corporate existence separate and apart from Zcom.

10.     These independent contractors are no more a part of Zcom than Zcom is a part of VZW![1] Zcom did not control the day to day functioning of these independent contractors, who had all been vetted and approved by VZW itself. VZW is clearly trying to convey the false impression that Zcom was operating businesses in New Jersey, and that is simply false.

11.     Moreover, while Pino refers to 11 different locations in New Jersey, the more accurate figure is 3 - wholly independent entities operating 3 locations in New Jersey at the time that VZW improperly commenced suit against Zcom on November 4, 2011.

12.     Pino certainly lacks personal knowledge about many of the "events" in New Jersey he speaks of in his Certification. Critically, however, the totality of these "events" and "meetings" were all driven by and at the control and insistence of VZW. Any meetings that were held in New Jersey, whether at an office or a

---

[1] An examination of Zcom's Rule 7.1 statement reveals that Zcom has no subsidiaries and maintains no corporate affiliates in New Jersey.

8

restaurant (Pino Cert. ¶ 7(a-g)), occurred there because VZW demanded same. Even when I met with Pino to discuss Zcom's growth with VZW (which had been artificially stymied by Tom Verghese, then of VZW, and others), it was in Morristown, New Jersey at Pino's insistence and for his personal convenience (Pino Cert. ¶ 7(g)).

13. The same holds true for the VZW promotional "events" that Pino describes (Pino Cert. ¶¶ 8-9), which, as Pino concedes, Zcom was "strongly encouraged to attend" (Pino Cert. ¶ 8). Furthermore, the dealings with VZW's back offices in New Jersey were solely because that is where VZW chose to house such offices. Zcom did not choose to deal with VZW in New Jersey for any purpose, including billing, compensation and training (Pino Cert. ¶¶ 10-15) - rather, VZW dictated that New Jersey was where such matters were processed and handled. This was not a decision by Zcom. To the contrary, it was a command of VZW.

14. Critically, none of the "events" or "meetings" in New Jersey gave rise to the instant lawsuit.

15. VZW never provided Zcom with pre-suit notice of its intent to litigate, or an opportunity to negotiate to prevent the need for litigation. That is precisely what the contract demands, and VZW failed to comply. Accordingly,

9

this lawsuit must be dismissed. Additionally, VZW knows well that Zcom is, and always has been, a New York company, with its only office in New York, and without its own New Jersey presence.

WHEREFORE, as it is respectfully requested that Zcom's motion be granted in its entirety, and that the instant action be dismissed pursuant to Fed. R. Civ. P. 12(b).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at: New York, New York
Executed on: February 28, 2012

Respectfully submitted,

Vikas Dhall, a/k/a I.P. Singh
President and Chief Executive Officer
In Touch Concepts, Inc. d/b/a Zcom

ITC\022812VDhallReplyDecl