# EXHIBIT G

```
                                                        1
        121odintc

 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    -----------------------------x
 2
 3    IN TOUCH CONCEPTS, INC., d/b/a
 3    ZCOM, on behalf of itself and
 4    all others similarly situated,
 4
 5
 5                 Plaintiffs,             New York, N.Y.
 6
 6           v.                            12 Civ. 00025 (PKC)
 7
 7    VERIZON COMMUNICATIONS INC.,
 8    et al.,
 8
 9                 Defendants.
 9
10    -----------------------------x
10
11                                        January 24, 2012
11                                        10:23 a.m.
12
12    Before:
13
13                      HON. P. KEVIN CASTEL,
14
14                                        District Judge
15
15                         APPEARANCES
16
16    THE LAW FIRM OF RAVI BATRA, P.C.
17         Attorneys for Plaintiffs
17    BY:  RAVI BATRA
18         TODD B. SHERMAN
18
19    GREENBERG TRAURIG, LLP
19         Attorneys for Defendants Cellco Partnership
20         d/b/a Verizon Communications Inc.
20    BY:  DAVID JAY
21         TODD L. SCHLEIFSTEIN
21
22    LAW OFFICES OF DAVID C. BERG
22         Attorneys for Defendant
23         Ajay Bhumitra
23    BY:  DAVID C. BERG
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

2

121odintc

```
 1                      APPEARANCES CONTINUED
 2
 2   SIMON LESSER PC
 3        Attorneys for Defendant
 3        Shelly Bhumitra
 4   BY:  LEONARD F. LESSER
 5
 6                            oOo
 7             THE CLERK:  In the matter of In Touch Concepts, Inc.,
 8   against Verizon Communications, Inc., et al.
 9             Plaintiff ready?
10             MR. BATRA:  Good morning, your Honor.  Ravi Batra and
11   my associate Todd Sherman for the plaintiff.
12             THE COURT:  All right.  Good morning.
13             THE CLERK:  For the defendant?
14             MR. JAY:  Good morning, your Honor.  David Jay and
15   Todd Schleifstein, from Greenberg Traurig, for defendant Cellco
16   Partnership d/b/a Verizon Wireless.
17             Your Honor, if I could just deal with one initial
18   matter?  I am actually not admitted in the Southern District.
19   After a few years of asking Mr. Schleifstein to do all my
20   bidding, I have an application in process.  Rather than do
21   another pro hac, I actually wanted full admission at this
22   point.  So I am waiting on a Certificate of Good Standing from
23   one jurisdiction before I can actually submit that.
24             I asked Mr. Batra.  He had no objection to my
25   appearance today, but, obviously, that will only be with your
```

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

3

121odintc

```
 1    Honor's approval.
 2             THE COURT:  All right.  So this is an oral application
 3    from your colleague --
 4             MR. SCHLEIFSTEIN:  Your Honor, Mr. Schleifstein.
 5             I will sponsor Mr. Jay.
 6             THE COURT:  It is granted for the purposes of today's
 7    hearing.
 8             MR. JAY:  Thank you, your Honor.
 9             MR. SCHLEIFSTEIN:  Thank you, your Honor.
10             THE COURT:  OK.  So now I have had an opportunity to
11    look at the plaintiffs' papers.  And I see on page 2, this
12    is -- would be a travesty, in danger, feudal lord, bogus,
13    whitewashing, scapegoat, frivolous, and that's all on the first
14    four-and-a-half pages before the statement of facts begin on
15    page 5.
16             I've been through the declaration, and I see at Point
17    8.8 of the Agreement clear and unambiguous language.  "VZW,"
18    referring to Verizon, "has the right to terminate this
19    agreement at any time, with or without cause, upon six months'
20    prior written notice to agent."
21             There appears to be no dispute that six months' notice
22    was given, and I note that this Order to Show Cause and Request
23    for a Temporary Restraining Order is being presented a week
24    before the termination date, of which the plaintiff has had
25    notice since last July.
```

4

121odintc

```
 1              There is no need for an Order to Show Cause.  You
 2       could proceed with a motion for a preliminary injunction by
 3       notice of motion had you acted in a timely fashion.
 4              I've also come to learn that there is a prior action
 5       pending in the District of New Jersey between Verizon, the
 6       Cellco Partnership doing business as Verizon Wireless, and the
 7       plaintiff in this action, and it relates directly to the
 8       question of whether termination is appropriate.
 9              Why, sir, should I not deny your application for a
10       temporary restraining order outright and also today transfer
11       this action to the District of New Jersey under the rebuttable
12       presumption that exists in this circuit that the proper venue
13       as to two competing lawsuits is the first-filed action?  Take a
14       look at D.H. Blair v. Gottdiener, 462 F.3d 95 at 105.
15              And I do understand you have a motion to dismiss
16       pending in the District of New Jersey.  I'm well aware of that.
17              Go ahead, sir.
18              MR. BATRA:  Thank you, you, your Honor.  It is A
19       pleasure to be before you.  And I apologize if some of the
20       emotionality has leaked into the papers, because I'm engaged
21       since October 28th with opposing counsel for Verizon, Philip
22       Sellinger, who is not here but in the Bahamas, who has written
23       two letters to your Honor, one on Friday and one yesterday.
24              The fact of the matter, Judge, is that we tried to
25       make equity the last stop instead of the first stop.  My
```

5

121odintc

```
 1    client, who is present, wanted to have Verizon rethink what it
 2    was doing, because the contract that your Honor so correctly
 3    noted, at 8.8, says you can terminate this without cause.  And
 4    that would be fine if there were other contract clauses that
 5    were not problematic and were out to destroy 8.8 without cause
 6    termination.  One of those causes is 10.2, which is --
 7              THE COURT:  This is the clause on there is no implied
 8    covenant of good faith and fair dealing; is that the one you
 9    are referring to?
10              MR. BATRA:  Yes, indeed.
11              THE COURT:  How does that destroy 8.8?
12              MR. BATRA:  Because if you marry -- if you marry 10.2,
13    which is the implied covenant of good faith and fair dealing,
14    under New York law it cannot be taken out of a contract,
15    because the moment you take that out of a contract, the
16    foundation of the contract is skewed.  The rights and
17    obligations are no longer -- the mutuality of obligations go
18    out the window.  So what this became, essentially, between --
19              THE COURT:  So then wouldn't the remedy to be say
20    there is no contract between the parties?
21              MR. BATRA:  Well, if there was no severability clause
22    and if the Court didn't exercise its inherent powers of
23    severability, yes; but because there is a severability clause,
24    we don't have to get to that point --
25              THE COURT:  And what's your case for the proposition
```

6

121odintc

```
 1    that under New York law parties to a contract may not write out
 2    an implied covenant, exclude an implied covenant, for the
 3    implied covenant of good faith and fair dealing?
 4            (Pause)
 5            MR. BATRA:  Your Honor, on page 10 of our Memo of Law
 6    we cite the cases for New York law requiring that a clause be
 7    present.
 8            THE COURT:  No.  No.  No.  It is implied in every
 9    contract.  I got that.
10            I'm asking you for your case that parties to a
11    contract may not expressly carve the covenant out.  Do you have
12    a case that holds that?
13            MR. BATRA:  We didn't search that, Judge.
14            THE COURT:  But that is what you are asserting to me
15    this morning.  You prepared a Memorandum of Law 25 pages in
16    length, and yet your feature here this morning is this
17    proposition of law that parties to a contract may not carve out
18    the implied covenant of good faith and fair dealing, yet you
19    cite no case for that proposition.
20            MR. BATRA:  Your Honor, permit me to respectfully
21    disagree --
22            THE COURT:  Well, give me the case that you cite --
23            MR. BATRA:  Well, the very first case that we cite,
24    511 West 232 Owners Corp. v. Jennifer Realty, 98 N.Y.2d 144,
25    that says, quote, In New York, all contracts implied.  All.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

121odintc

```
 1              So in the State of New York there isn't a single
 2   contract that can't have this.  That's what I take from it.
 3              THE COURT:  OK.  Thank you for your interpretation.
 4              So now if I assume -- let's say I assume there is an
 5   implied covenant of good faith and fair dealing that stands
 6   side-by-side with an express provision permitting a party to
 7   terminate the agreement without cause, with or without cause,
 8   provided it gives six months notice.  How does that help you?
 9   And if I assume they acted in bad faith, how does that help
10   you?
11              MR. BATRA:  OK.  Thank you for that opportunity, your
12   Honor.
13              If -- let me address the first part of your Honor's
14   inquiry.  The reason it helps us is because we then go to their
15   termination notice itself, which is Exhibit 2 of the Dhall
16   Affirmation or Declaration.  In that exhibit, termination, they
17   identify -- they assert that this is a no-cause termination.
18   But out of an abundance of caution, they make the gift of
19   notifying us what the causes would have been had they chosen to
20   go that route.
21              THE COURT:  And they're lies?
22              MR. BATRA:  And those causes are more than lies.
23              THE COURT:  Well, let's stick with "lies" for the
24   moment.
25              If they are lies, how does that help you?  Your
```

8

121odintc

```
 1    position is that if they just sent the letter and they said
 2    you're terminated without cause, they would have a contractual
 3    right to do that and you wouldn't be standing before me right
 4    now.  But because they proceeded to give reasons and those
 5    reasons were not truthful, that gives rise to a claim for
 6    relief under 8.8?
 7              MR. BATRA:  It does, your Honor, for the following
 8    reasons:  Because New York law, for example, says that a party
 9    who is terminating a contract cannot do it for a corrupt
10    purpose.  Here Verizon Wireless -- and we documented this in
11    the action that's been removed to your Honor's part --
12              THE COURT:  What does a "corrupt purpose" mean?  And
13    what case is that?
14              MR. BATRA:  Sure.  Page 13, your Honor, of our memo,
15    Integrated Sales v. Maxwell Corp. of America, 94 A.D.2d. 221
16    (First Department 1983).
17              (Pause)
18              THE COURT:  All right.  The case you are relying on
19    was a Court's review of an arbitrator's decision.
20              What is the standard for a review of an arbitrator's
21    decision.
22              MR. BATRA:  A much higher one, your Honor, certainly
23    not de novo.  I understand that.
24              But the fact of the matter is good cause and fair
25    dealing, the antithesis of that would be corrupt action by the
```

9

121odintc

```
 1    other party to the contract.  And they don't -- and the express
 2    clause vitiating good faith and fair dealing is sort of like a
 3    get-out-of-jail card for free in Monopoly.  This isn't -- it
 4    simply goes to the heart of this contract.
 5              If your Honor would consider the following?
 6              They state in their termination that there are two
 7    grounds if they were to state the causes, and if they were
 8    doing a for-cause termination -- they actually stated it.  So
 9    we don't have to divine as to what could have been; we have it.
10              They then list eight items under a for cause
11    termination dealing with alleged bad acts of ITC, In Touch
12    Concepts.  It turns out -- and we've given dispositive proof or
13    near dispositive proof -- that all of those things are not an
14    ITC issue but, rather, coming from Verizon, and that is why the
15    class action was started, because we were able to decipher
16    their entire nationwide fraudulent scheme on prepays, which is
17    how they would get -- and we have e-mails galore, not only the
18    in camera review area which we handed to your Honor, but also
19    starting with Exhibit 4 of the Dhall Declaration.
20              And if you look at the cc on those e-mails, I believe
21    the first one is June 25th of '09, there is maybe 50 people in
22    Verizon who are being notified by a Verizon employee, cc'ed,
23    how they're directing ITC, you've got to do this, this is the
24    quota.  ITC didn't go hire lawyers to figure out whether or not
25    there was a nationwide scam going on.  They have an obligation
```

10

121odintc

```
 1    to use their best efforts with what they believe to be lawful
 2    instructions.  We're the ones, as their lawyers, who recently
 3    deciphered the scam, down to pennies.  In the first version of
 4    the scam, no matter what occurred, if there was a deactivation
 5    solely in the discretion of Verizon, they stood to make $19.60,
 6    period.  Under a revised plan, they make $6.40.  But either
 7    way, Verizon came out ahead.  And they got a free activation
 8    number to falsely report to the SEC, falsely report to the FCC,
 9    and, more importantly, falsely report to Wall Street as well as
10    the stockholders and creditors.
11            So there were steroid enhancement, their performance
12    on the Street, with actually phony activations that they
13    concocted.  So the first eight listings, the sublisting under
14    the first category, aimed at ITC are in fact Verizon's conduct
15    and not ITC's.
16            So that's one.
17            Second, the second category they refer to is --
18            THE COURT:  How did you discover this?
19            MR. BATRA:  Your Honor, my associate Todd Sherman has
20    worked in the Rackets Bureau for the Bronx DA's Office, and we
21    sat there trying to figure out why were Verizon doing what they
22    were doing, why were they forcing an agent of theirs to push
23    prepaid sales when the agent doesn't make money.
24            THE COURT:  How did you uncover these e-mails?
25            MR. BATRA:  The e-mails, your Honor, were in my
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

121odintc

```
 1    client's possession.
 2              THE COURT:  Oh.  When are they dated?
 3              MR. BATRA:  From 2009, your Honor.
 4              THE COURT:  And you --
 5              MR. BATRA:  And moving forward.
 6              THE COURT:  And you received a notice of termination
 7    in when?  July?
 8              MR. BATRA:  July 25th, your Honor.  I met with my
 9    client for the first time in August.
10              THE COURT:  Today is January twenty what?
11              MR. BATRA:  24th.
12              THE COURT:  24th?
13              MR. BATRA:  Yes.
14              THE COURT:  And the contract terminates on
15    January 31st?
16              MR. BATRA:  Indeed, your Honor.
17              THE COURT:  And you had these e-mails since 2009, and
18    you are basing your application for a temporary restraining
19    order on them?  In fact, you commenced this very action in
20    state court back in December, didn't you?
21              MR. BATRA:  Well, because there was already a
22    prior-related action that was pending starting September of
23    2011.  So since it was already there, there had already been
24    judicial action, so it was filed as a related action.  The fact
25    that --
```

121odintc

```
 1              THE COURT:  When was it filed in state court?
 2              MR. BATRA:  ITC was sued by subagents in
 3    September 20th of 2011, alleging to ITC the misconduct of
 4    Verizon itself.  So they were seeking to hold ITC liable for
 5    something that Verizon had done and forced them to do.  So the
 6    fact is -- so that case was started.
 7              But, your Honor, your larger question is did we sit
 8    our rights, and the answer is no.  In fact, as soon as I was
 9    involved in this matter, my client made a conscious decision
10    that after 20 years of doing business with Verizon, obviously
11    there is something wrong in what's occurred.  So he wanted to
12    try it out to see if he could get a change of heart from
13    Verizon.  A great deal of time was spent in those e-mails.  And
14    in late August, he was told -- he offered Verizon three
15    options:
16              Option One, to change corporate governance, in
17    addition to enforce proof that none of the issues raised under
18    the first category of misconduct by ITC were valid.
19              Option two was to merge with another entity.
20              And option three was to sell to someone else.
21              THE COURT:  And Verizon accepted those options?
22              MR. BATRA:  No, your Honor.
23              THE COURT:  They rejected them?
24              MR. BATRA:  They rejected the first two but not the
25    third.
```

13

121odintc

```
 1                THE COURT:  OK.
 2                MR. BATRA:  The first two they said we're not
 3     interested in your proof.  We don't care.  We're wrong.  We
 4     don't care.  And we don't want you -- we just don't want to
 5     have business with you.
 6                THE COURT:  So they accepted the third?
 7                MR. BATRA:  So they said go after option third.
 8                So if -- so we went chasing the wild goose chase for
 9     option third.  In fact, Pino -- I forget his last name --
10     Salanno, Mr. Salanno, from Verizon, sent an e-mail saying focus
11     on option three.  And, sure enough, my client then went seeking
12     preapproved Verizon agents -- master agents to go take over his
13     little empire, OK, of 120 stores all various parts of the
14     country.
15                And that process took its time, because, obviously, if
16     that had occurred we wouldn't be here, because equity shouldn't
17     be the first door to knock on.
18                So we go there.  We go through that process.  And what
19     do we find around November and December?  That Verizon is
20     actually blocking that process, is showing ITC's locations
21     around Long Island and other places to some of them, our
22     prospective buyers in absolutely tortious interference of our
23     rights.
24                We notified them.  They then finally, to give you the
25     short end of this long story, just last week --
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

121odintc

```
 1                 THE COURT:  Wait a minute.  You filed this lawsuit.
 2                 MR. BATRA:  Indeed.
 3                 THE COURT:  This lawsuit.
 4                 MR. BATRA:  Yes.
 5                 THE COURT:  In state court.
 6                 MR. BATRA:  Yes.
 7                 THE COURT:  In December.
 8                 MR. BATRA:  December 28th, your Honor.
 9                 THE COURT:  OK.  All right.  Today is January 24th.
10                 MR. BATRA:  Yes.
11                 THE COURT:  You knew you had a claim for relief on
12      December 28th, when you filed the lawsuit, correct?
13                 MR. BATRA:  Your Honor --
14                 THE COURT:  Correct?  Yes?
15                 MR. BATRA:  Indeed, Judge.
16                 THE COURT:  OK.
17                 MR. BATRA:  Mr. Sellinger, my primary adversary for
18      Verizon, who is not present and is in the Bahamas, is most
19      charming and most comforting.  We had long conversations,
20      discussions trying to avoid a lot of litigation.  So we stayed
21      in touch with each other, although when we first got started, I
22      was told he was having double knee surgery and I said, don't
23      worry, we could extend it a little bit, what we are going to
24      do, get better, we have time.  And the next thing I know, a few
25      days after that October 28th conversation, that e-mail traffic,
```

121odintc

```
 1   they run into court in Jersey filing a declaratory judgment
 2   action, asking a court are we right when we terminated ITC --
 3            THE COURT:  When was the declaratory judgment action
 4   filed?
 5            MR. BATRA:  That is it.  Verizon was asking New
 6   Jersey --
 7            THE COURT:  No.  When was the declaratory judgment
 8   action filed?
 9            MR. BATRA:  November 4, 2011, your Honor.
10            THE COURT:  All right.
11            MR. BATRA:  So within days of my conversation with
12   Mr. Sellinger, who was going to go through double knee surgery,
13   and I said, I'd hold back, I'll hold back, and in the meantime
14   my client is trying to resolve this, go option three --
15            THE COURT:  Have you answered the complaint in New
16   Jersey?
17            MR. BATRA:  Indeed, your Honor, with the motion to
18   dismiss your Honor referenced.  And that motion to dismiss
19   says --
20            THE COURT:  So you haven't answered the complaint?
21            MR. BATRA:  Well, we responded with a motion to
22   dismiss.
23            THE COURT:  That's right.  OK.  So why don't you turn
24   to the question of why, under the first-filed rule, this case
25   ought not be transferred to the United States District Court
```

16

121odintc

```
 1    for the District of New Jersey, where a prior action between
 2    Cellco Partnership, doing business as Verizon Wireless, and In
 3    Touch Concepts, doing business as Zcom, is pending and has been
 4    pending since November?
 5            MR. BATRA:  Surely, your Honor.  Incorporating our
 6    papers, which are a part of our Order to Show Cause, I would
 7    say, in brief, two points:
 8            One, the very contract that your Honor wants to give
 9    full force to --
10            THE COURT:  It has a New York choice of law provision
11    in it.
12            MR. BATRA:  No, I wasn't referring to that.  It does,
13    but that's not what I am referring to.
14            There was a presuit condition precedent --
15            THE COURT:  And you claim they did not --
16            MR. BATRA:  They absolutely didn't.
17            THE COURT:  OK.  So why is that a basis not to
18    transfer this to the District of New Jersey?
19            MR. BATRA:  I'm sorry.
20            THE COURT:  Why is the fact that Verizon Wireless is
21    dead wrong in the Jersey action and dead wrong in this action,
22    in your view, because they did not comply with the notice
23    provision, a reason not to transfer this to the District of New
24    Jersey?
25            MR. BATRA:  Indeed.
```

17

121odintc

```
 1              THE COURT:  That's the question.
 2              MR. BATRA:  Indeed.  There is no reason to transfer
 3   this case to New Jersey, one, for that condition precedent to
 4   suit, but, secondly --
 5              THE COURT:  Why is that a reason not to transfer?  I'm
 6   not getting you.
 7              In other words, if you are right, then the District
 8   Court in the District of New Jersey, where the first-filed
 9   action is, will so rule, as you had asked me to so rule if you
10   are right.  And if you are wrong, the Court will so rule, as I
11   would so rule.  OK?
12              MR. BATRA:  That's fine.  So let me get to the second
13   point as to why it may be improvident to transfer it.  And that
14   is Verizon sued on November 4, 2011 on diversity basis.
15              THE COURT:  Yes.
16              MR. BATRA:  ITC has no contact, no office, no -- it is
17   not a citizen of New Jersey but New York.  Verizon certainly
18   is.  So Verizon had to come and sue, if at all, it wanted to
19   sue, it had to be in New York.
20              So that court, that your Honor is considering sending
21   it to and Verizon is requesting by a preletter motion, is a
22   court that lacks subject matter jurisdiction based upon because
23   diversity is simply lacking.
24              THE COURT:  Well, how is diversity lacking?  You are
25   asserting there is no in personam jurisdiction, correct?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

121odintc

```
 1              MR. BATRA:  Right.
 2              THE COURT:  How is diversity of citizenship lacking?
 3              Your motion may be granted.  There may be a lack of
 4    personal jurisdiction.  But how does that affect diversity
 5    jurisdiction?
 6              MR. BATRA:  Because diversity, if the plaintiff is --
 7    if the plaintiff doesn't go to their home state federal
 8    courthouse, they have to go to the defendant's home state.  So
 9    Verizon, based in New Jersey --
10              THE COURT:  No.  No.  A New Yorker may sue a New
11    Jersey resident, a citizen of New Jersey -- a New York citizen
12    may sue a New Jersey citizen invoking diversity of citizenship
13    if the amount in controversy exceeds 75,000 exclusive of
14    interest and costs in New York federal court or in New Jersey
15    federal court.
16              The reality is if the New Jersey resident has sued the
17    New York resident in state court, then the New York resident
18    may not remove to federal court; that is true.
19              But there is nothing inappropriate or wrong in terms
20    of principles of diversity jurisdiction for a New Jersey
21    citizen to sue a New York citizen in the United States District
22    Court for the District of New Jersey or the United States
23    District Court for the Southern District of New York.  There
24    may be a question of whether there is personal jurisdiction in
25    either of those courts, and there may not be personal
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

121odintc

1  jurisdiction.  But in terms of principles of diversity, I'm not
2  understanding.
3          You are talking about Section 1332 of Title 28, I
4  assume.
5              MR. BATRA:  Indeed.
6              THE COURT:  What is the defect in diversity
7  jurisdiction?
8              MR. BATRA:  Your Honor, we go through the
9  organizational chart of Verizon as listed in the caption of
10 this case.  And the diversity of -- the diversity jurisdiction
11 of a New Jersey corporation or, rather, a partnership picks up
12 the citizenship of each of the partners --
13             THE COURT:  It does.
14             MR. BATRA:  -- and moving up the chain.
15             THE COURT:  It does.
16             MR. BATRA:  So what ends up happening is that the
17 action -- the DJ action started by Verizon in November of last
18 year doesn't meet the standard of diversity jurisdiction,
19 whereas which is if anybody in the caption on top or bottom
20 is -- you have to have someone of a different state; you can't
21 be -- everybody can't be in the same place.  So Verizon
22 corporation, for example, which is the ultimate --
23             THE COURT:  Who are the partners of Cellco
24 Partnership?  If one of the partners of Cellco Partnership is a
25 New York citizen, then there is no diversity.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

20

121odintc

```
 1                MR. BATRA:  Indeed, your Honor, and that is the case.
 2                THE COURT:  OK.  Well, who are the partners?
 3                MR. BATRA:  Well, at Cellco, your Honor, which is
 4    Verizon Wireless, is owned by ultimately Vodafone 45 percent,
 5    which acts through two partners, and Verizon Corporation of New
 6    York, which acts through two partners, and those partners, your
 7    Honor, are Bell Atlantic -- I'm sorry, Bell Atlantic Mobile
 8    Systems, Inc., GTE Wireless Incorporated --
 9                THE COURT:  So wait a minute.  What I'm looking for
10    now is the partners in Cellco Partnership.
11                MR. BATRA:  Right.
12                THE COURT:  That's what you are going to give me?
13                MR. BATRA:  Indeed.
14                THE COURT:  And the names of those entities?
15                MR. BATRA:  Bell Atlantic Mobile Systems, Inc., which
16    is number 19 on our caption, your Honor, and number 20, GTE
17    Wireless Incorporated; those two are the Verizon core partners
18    that own Cellco, along with Vodafone's partners, which are
19    captioned defendant 22, JV Partnerco, LLC, and 21, which is PCS
20    Nucleus, L.P.  And those are the Vodafone partners.  So --
21                THE COURT:  OK.  All right.  Well, wait a minute.
22                The name of the entity, the Vodafone-related entity
23    that is a partner in Cellco Partnership is what?  What is the
24    name of it?
25                MR. BATRA:  PCS Nucleus, that's 21, defendant 21, and
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

121odintc

```
 1    JV Partnerco, LLC, which is caption 22.
 2            THE COURT:  OK.  Now, which is one of these --
 3    because, you know, by the way, if any one of these is a citizen
 4    of New York, then there is no subject matter jurisdiction here.
 5            MR. BATRA:  Well, no.  This case was transferred here
 6    under CAFA, the class action, so it is a federal balance.  So
 7    that's how the defendants --
 8            THE COURT:  I see.
 9            MR. BATRA:  So we're safe but Jersey is not.
10            THE COURT:  All right.  Let me hear from the
11    defendants on whether the court in New Jersey has subject
12    matter jurisdiction.  Who are -- what is the citizenship of the
13    members of Cellco Partnership?
14            MR. JAY:  Your Honor, the four partners were named
15    correctly.  It is Bell Atlantic Mobile Systems, GE --
16            THE COURT:  Let's start with that.  What states are
17    Bell Atlantic Mobile Systems, Inc., a citizen of?
18            MR. JAY:  They are not New York, your Honor.  I don't
19    have the exact --
20            MR. SCHLEIFSTEIN:  Your Honor, I could particularize,
21    if you would like me to interject.
22            Your Honor, Bell Atlantic Mobile Systems is a Delaware
23    corporation with its principal place of business in New Jersey.
24            THE COURT:  OK.  Now let's go on to -- the second one
25    is GTE Wireless Incorporated, is that correct?
```

22

121odintc

```
 1            MR. SCHLEIFSTEIN:  Yes, your Honor.  It is also a
 2    Delaware corporation with its principal place of business in
 3    New Jersey.
 4            THE COURT:  OK.  Now, PCS Nucleus, L.P., who are the
 5    members of that limited partnership, and what is their
 6    citizenship?
 7            MR. SCHLEIFSTEIN:  Your Honor, all of the members of
 8    that limited partnership are citizens of the states of either
 9    Delaware or Colorado.
10            THE COURT:  All right.
11            MR. SCHLEIFSTEIN:  No New York citizens are partners
12    of PCS Nucleus.
13            THE COURT:  And all the partners are natural persons?
14            MR. SCHLEIFSTEIN:  No.  There are some entities but
15    they are all comprised of citizens of Delaware and/or Colorado.
16            THE COURT:  All right.  And JV Partnerco, LLC, that is
17    the other partner in Cellco Partnership?
18            MR. SCHLEIFSTEIN:  Yes, your Honor.  It is a limited
19    liability company whose members are citizens of either Delaware
20    and/or Colorado.  No New York residents.
21            THE COURT:  All right.  OK.  Now I turn back to
22    plaintiff's counsel.  Where is the New York citizen among the
23    members of Cellco Partnership?
24            MR. BATRA:  The Bell Atlantic and GTE Wireless are
25    owned by Verizon Communications --
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

121odintc

```
 1              THE COURT:  Corporations.  We stop at the
 2   corporations.  That's wrong on the law.  That is just wrong on
 3   the law.  We stop at the corporations.
 4              (Pause)
 5              MR. BATRA:  My associate reminds me that I think
 6   defense counsel said that there were other entities that were
 7   not corporations within this.  So since they are not --
 8              THE COURT:  Well, there are four entities -- four
 9   members of Cellco Partnership, correct?
10              MR. BATRA:  Yes, your Honor.
11              THE COURT:  And I've identified them.  And defendant
12   has represented in court that each of the partners of the two
13   partnerships -- the two corporations are citizens of states
14   other than New York, and that the members of the LP and the LLC
15   are all non-New York citizens.
16              And I'm asking you, if you have some basis to take
17   issue, tell me who the member is who is a New York citizen.
18              MR. BATRA:  I was only looking, your Honor, at 19 and
19   20, which are the two Verizon partners.
20              THE COURT:  They are not limited partnerships.
21              MR. BATRA:  Right.
22              THE COURT:  They are not LLCs.  And we only look to
23   those two corporations' state of incorporation and their
24   principal place of business, and nothing more.
25              MR. BATRA:  Indeed, your Honor, and only the defense
```

24

121odintc

```
 1    can speak to who all the partners are and if any of those
 2    partners are a partner in New York, because that's a
 3    representation they are making.
 4              THE COURT:  Right.  And you haven't moved to dismiss
 5    the Jersey action for lack of subject matter jurisdiction, is
 6    that correct?
 7              MR. BATRA:  We did, your Honor, along with the fact
 8    they haven't satisfied the presuit condition precedent.
 9              THE COURT:  All right.  And that is pending?
10              MR. BATRA:  Yes, your Honor.  And that is currently --
11    at the defense request, it was postponed to December 23rd.
12              THE COURT:  Anything else you want to tell me, sir?
13              MR. BATRA:  Your Honor, yes.
14              There is absolutely no prejudice here with the Court
15    exercising its equitable powers.  There is a pending case here
16    under a federal question.
17              If the Jersey action is infirm on an attack under
18    subject matter jurisdiction, it is pretty solid on the presuit
19    requirement, because a condition precedent was not satisfied by
20    Verizon while it was by us.
21              So a referral from here to there is going to -- is
22    basically going to leave ITC in a lurch, and there are about
23    400 jobs, there are businesses that are going to be wiped out
24    on the 31st.  And the reason -- and it goes back to your
25    central question -- why wait so long?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

121odintc

```
 1              THE COURT:  No.  I am going to rule on your temporary
 2    restraining order application.
 3              MR. BATRA:  So --
 4              THE COURT:  There will be no lurch here.
 5              MR. BATRA:  It is only this past week that the last
 6    effort to try to get Verizon, who had said go with option
 7    three, you know, sell to somebody else, so there was some -- a
 8    prospective customer number three, a third real event, where
 9    they were willing to take over.  71 stores -- all preapproved
10    locations, no issues -- were in the deal.  The buyer wanted
11    them.  ITC was selling them.  The subagents had given full
12    authority for the transfer.  Leases had been turned over.  And
13    out of the 71 stores just last week, Greg Schenkl, a Verizon
14    manager, sent an e-mail saying I am only letting you transfer
15    10.
16              So all the conversations and mere pillow talk that
17    Philip Sellinger and I have had over the last three months,
18    where don't worry, we'll work it out, and go sell and do
19    whatever, whatever, has turned out to be a complete wild goose
20    chase so it became clear that there was really no good faith at
21    any level, which is why we then had to work like crazy to put
22    this together.
23              I apologize for the lack of organization of our Order
24    to Show Cause, because we are bringing things together -- you
25    see our multiple exhibit numbers that are similar and are quite
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

121odintc

```
 1    confusing, but this is -- it is a massive undertaking to get
 2    basically to the Court and say there is absolutely no prejudice
 3    to the other side, status quo being maintained.
 4              There is no problem under Rule 65.  If your Honor
 5    wanted to schedule a hearing, for example, later next week,
 6    that would be fine.  I mean, the idea is for the Court to be
 7    comfortable that it's using its equitable powers to do good and
 8    it is not being used for any other purpose, and it is not.
 9              The fact of the matter is a great deal of time has
10    been spent by my client, who is essentially a businessman, who
11    arbors litigation, didn't want to do it, it is the last thing
12    on his mind, and in business if you can make a deal with your
13    opponent, you live to do business again.  You start litigating,
14    it is basically over.
15              And, of course, you know, we had done the 28th of
16    December, and we responded to the New Jersey action by Verizon,
17    which was just ten days ago.  And now we're here because the
18    third option died last week, with an option of 71 stores, a
19    buyer ready, willing and able to buy, fully preapproved by
20    Verizon, every location preapproved because they are part of
21    Verizon's distribution setup.  All of a sudden, again, lack of
22    good faith and fair dealing, they said, oh, no, we won't let
23    you have all of them.  Because if that had occurred, we
24    wouldn't be here, it would have been mooted.  Then our damage
25    cause of action wouldn't have gone forward under law, but it
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

121odintc

```
 1   wouldn't be an equitable relief being sought.  So we really got
 2   pushed to the door not on July 26th of last year, but we got
 3   pushed to the door last week, literally Thursday and Friday.
 4               THE COURT:  Thank you.
 5               MR. BATRA:  Thank you, your Honor.
 6               THE COURT:  All right.
 7               On plaintiff's application for a temporary restraining
 8   order, I note that the parties entered into an agreement on or
 9   about October 7, 2008, in which the parties agreed, at
10   Paragraph 8.8, that Verizon has the right to terminate the
11   agreement at any time with or without cause upon six months'
12   prior written notice to the agent, the agent being the
13   plaintiff in this action.
14               The six-month termination notice provision is a very
15   reasonable one and one that gives the parties an opportunity to
16   negotiate, to reconsider, to litigate, if they need to
17   litigate.  And, indeed, that's in contrast to a five-day notice
18   termination provision in 8.5 if the agent fails to achieve the
19   MAL in two consecutive quarters; that's a five-day notice
20   provision.  But the with or without cause requires six months'
21   notice.  And at this stage of the game, there is no dispute
22   that six months' notice was given.
23               There is a dispute, however, as to whether or not the
24   termination was lawful and appropriate and whether certain
25   preconditions were engaged in and engaged in prior to the
```

28

121odintc

```
 1    filing of an action in the District of New Jersey by Verizon.
 2            The plaintiff has not shown either a probability of
 3    success on the merits or serious questions going to the merits
 4    making them a fair ground for litigation.  The Court, for the
 5    purposes of considering the TRO, assumes that there is an
 6    implied covenant of good faith and fair dealing, although the
 7    contract does not contain one.
 8            Lest my ruling be misinterpreted, I am not ruling that
 9    there is indeed an implied covenant of good faith and fair
10    dealing.  I'm assuming it arguendo for the sake of this TRO
11    application, which is quite different than a ruling that there
12    is such a covenant in the agreement.  So I point that out.
13            In the Second Circuit, under Section 1404(a), a court
14    may, for the convenience of parties and witnesses, in the
15    interest of justice transfer a civil action to any other
16    district or division where it might have been brought.  In the
17    event that jurisdiction may be proper in more than one forum
18    and an action is one of two competing lawsuits, the Second
19    Circuit has held that considerations of judicial administration
20    and conservation of resources favor the transfer to the
21    first-filed forum.
22            And I recognize that that is not an invariable
23    mandate, but in this situation it appears appropriate.  There
24    is a schedule in place with regard to motions.  The Court has
25    had the case before it since last November.  The lawsuit does
```

121odintc

```
 1    in fact relate to the lawfulness of the termination by Verizon.
 2              Now, I will quickly say that the Court in New Jersey,
 3    if it concludes for some reason that there is no personal
 4    jurisdiction or there is some other good reason why this
 5    action, or the action before it, ought to be transferred to the
 6    Southern District of New York, so be it.  But the Court where
 7    the first-filed action is can determine that, and, indeed, if
 8    for any reason this case were to come back to this district, it
 9    should be designated for assignment to me because I've now
10    functioned on it and have had to come up to speed on this.
11              So the application for a temporary restraining order
12    is denied, and that's ruled on.
13              Now, with regard to any application for a preliminary
14    injunction, which is different than the application for a
15    temporary restraining order, since this case is going to be
16    transferred to the District of New Jersey, obviously that's
17    without prejudice to any application for a preliminary
18    injunction the plaintiff wants to make in that court.  I will
19    simply note that it has known of the termination since last
20    July.  It filed this action on December 28th in state court.
21    And only now, a week before the termination, comes into this
22    court seeking a temporary restraining order.
23              So the TRO application is denied, and the case will be
24    transferred to the District of New Jersey.
25              Anything further from the plaintiff?
```

30

121odintc

```
 1              MR. BATRA:  Yes, your Honor.
 2              THE COURT:  Yes.
 3              MR. BATRA:  I'm disturbed a little bit by your Honor's
 4  pronouncement that we haven't shown to the Court likelihood of
 5  success on the merits --
 6              THE COURT:  Well, that's your right to do so, sir.
 7  But that's my ruling.
 8              MR. BATRA:  I understand.  I just wanted for the
 9  record to offer your Honor that while we -- while I did discuss
10  only one element, which was that the prepaid scam allegations,
11  eight subparts, under the termination letter, the second
12  category we never did get to discuss and the fact --
13              THE COURT:  Sir, that's why you made a written
14  submission to me, which I have reviewed.
15              Thank you.
16              MR. BATRA:  OK.  Thank you, your Honor.
17              THE COURT:  Anything further from the defendant?
18              MR. JAY:  No, your Honor.
19              THE COURT:  OK.  Thank you very much.  I appreciate
20  your presentation this morning, and it was a very interesting
21  matter and I enjoyed presiding over it.  Thank you.
22              MR. BATRA:  Thank you, your Honor.
23              MR. JAY:  Thank you, your Honor.
24              MR. SCHLEIFSTEIN:  Thank you, your Honor.
25                         -  -  -
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300